UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LEONARD DENNIS,**

        **Plaintiff,**

**v.**

        Case No. 2:15-cv-688
        **JUDGE GEORGE C. SMITH**
        **Magistrate Judge Deavers**

**NATIONWIDE CHILDREN'S HOSPITAL,**

        **Defendant.**

**OPINION AND ORDER**

Plaintiff Leonard Dennis brings this action against Defendant Nationwide Children's Hospital alleging claims of interference and retaliation in violation of the Family Medical Leave Act, 29 U.S.C. §2601, *et seq*. ("FMLA").  This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 10) and Plaintiff's Motion to Supplement (Doc. 24).  The motions are fully briefed and ripe for review.  For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES AS MOOT** Plaintiff's Motion to Supplement.[1]

**I.    BACKGROUND**

Defendant Nationwide Children's Hospital ("Nationwide") is a hospital located in Columbus, Ohio, that is subject to the requirements of the Family and Medical Leave Act ("FMLA").  Plaintiff, Leonard Dennis, is a 45 year old, African American, who was employed as

---

[1] Plaintiff moves to supplement his summary judgment briefing with briefing from another case currently pending in this Court.  The Court has reviewed the briefing on the Motion to Supplement and finds that it is not admissible evidence in this case and ultimately, even if considered, would not impact the outcome of this case.

a surgical operating room technician at Nationwide, beginning September 10, 2012, until he was discharged on September 11, 2014.

As a surgical technician, Plaintiff was responsible for preparing operating rooms for medical procedures and assisting the surgeons during surgeries. (*See* Doc. 11, Dennis Dep. at 59-60; Doc. 12, Spears Dep. at 15). Leigh Spears is the Nationwide operating room Program Manager. She was responsible for hiring Plaintiff. Plaintiff described his position as a physically strenuous job that requires a significant amount of walking and standing. (Doc. 11, Dennis Dep. at 64-67, 99). Plaintiff assisted in surgeries that lasted as long as three hours. (*Id*. at 72). Additionally, he was expected to lift and position patients, which required him to bear both his weight and that of the patient. (*Id*. at 74).

On March 10, 2014, Plaintiff informed Ms. Spears that he needed to leave early for the day to see his doctor due to persistent pain in his foot.[2] (Id. at 95). The next day, March 11, 2014, Nationwide received a fax from Plaintiff's physician, Dr. Jeffrey Gittins, stating that Plaintiff:

> CAN RETURN TO SEATED DUTY ONLY AT THIS TIME; IF NO SEATED DUTY IS AVAILABLE HE WILL NEED TO REMAIN OFF WORK UNTIL APPROX 3/17/14 AT WHICH TIME HE WILL BE REEVALUATED.

(Doc. 11-2, Dennis Dep. Ex. 13, p. 2). This documentation was supplemented on April 18, 2014, via fax that contained the physician's signature which was lacking in the previous communication.[3] (Doc. 11-2, Dennis Dep. Ex. 16). The limitations included: "Patient can

---

[2] Plaintiff explained, "I've had pain in my left foot since my military service." (Doc. 11, Dennis Dep. at 92). "I suffered damage to my left foot during a military training exercise.. . I had a surgical procedure while in the military to address this." (*Id*. at 33-34).

[3] On March 27, 2014, a letter was mailed to Plaintiff from Davina Tate, Compensation & Benefits Analyst, informing him that the "Health Care Provider's signature is missing." (Doc. 11-2, Dennis Dep. Ex. 15).

perform light duty or seated duty at this time. Must wear orthopedic boot at all times." (*Id.*). Plaintiff then spoke to Ms. Spears and Ms. Hendricks regarding the doctor's recommendations. It was agreed that "there was no seated duty at Nationwide Children's for your position." (*Id.* at 99).

As a full-time employee, Plaintiff Dennis was entitled to benefits under the FMLA. On March 13, 2014, Plaintiff formally requested FMLA leave and he received an email confirming his request. (*See* Doc. 11-2, Dennis Dep. Ex. 14). Plaintiff requested FMLA leave because he was unable to walk and seated duty was not available to him. (Doc. 11, Dennis Dep. at 92-99). The FMLA certification was completed by Dr. Gittins restricting Plaintiff from standing or walking more than one hour during work hours. (Doc. 11-2, Dennis Dep. Ex. 16, p. 6). Plaintiff described that a surgery could last 15 to 30 minutes, or as long as three hours, but that "[t]hey're all usually about an hour, hour and a half." (Doc. 11, Dennis Dep. at 72). However, "I'll be relieved for breaks and for lunches. And if it goes on, a following break and then the end of the shift. So there's never a situation when I would go more than, I would say, two hours in one procedure without being relieved." (*Id.*). In addition to the time working surgeries, Plaintiff was regularly standing and walking while gathering supplies, receiving case assignments, and pushing case carts. (*Id.* at 64-67). Plaintiff therefore could not return to work with the restrictions imposed by his doctor because he could not perform the essential functions of his job. Plaintiff understood that he would remain off work until his doctor released him to return. (*Id.* at 99-101).

> Q. And so when you left that, you understood okay, well, you're out on a leave until your doctor releases you to return to work, right?
>
> A. Yes, sir.

(Doc. 11, Dennis Dep. at 101).

Plaintiff ultimately had surgery on his foot on May 7, 2014, and his surgeon, Dr. Feibel faxed this information to Defendant, explaining that Plaintiff would be off work for approximately nine weeks following the surgery.  (Doc. 11-2, Dennis Dep. Ex. 19, p. 2). Additionally, Dr. Feibel faxed the completed FMLA certification form which stated Plaintiff was non-weight bearing and "to be off work" until July 31, 2014.  (Doc. 11-2, Dennis Dep. Ex. 23, p. 3; Dennis Dep. at 138–140).  After submitting this FMLA request, Plaintiff was given a "Notice of Eligibility and Rights & Responsibilities from Davina Tate on May 28, 2014.  (*See* Doc. 11-2, Dennis Dep. Ex. 25).  The form states that "You notified us that you will be leaving on 3/11/14 and you expect to return to work on or around 7/31/14." (*Id.*).  Additionally, the notice informed Plaintiff that his 12 weeks of FMLA leave will exhaust on 6/3/14. (*Id.*).  Finally, it clearly states that "[i]t is your responsibility to periodically report your status and intent to return to work to your manager.  If you are on a medical-related leave, it is your responsibility to submit a return to work slip to Human Resources at least 2-days prior to your return to work date." (*Id.*).

Plaintiff was granted FMLA leave from March 11, 2014, the first day he was off for his condition, until June 3, 2014, when his FMLA leave expired.  Defendant sent Plaintiff a letter dated June 11, 2014, informing him that he had exhausted his twelve weeks of FMLA leave, but that Nationwide would extend Plaintiff a Personal Leave of Absence and offered to hold his position until June 30, 2014.  (Doc. 11-2, Dennis Dep. Ex. 2).  The letter informed Plaintiff that he must notify Ms. Spears at least two days prior to the date he planned to return to work and must fax the enclosed release to return to work to Davina Tate in Human Resources. (*Id.*).  The letter specifically stated that "A release to return to work is required to be restored to employment.  If such release is not timely received, your return to work may be delayed until a

release to return to work is provided." (*Id.*). This letter also explained that if he was unable to return to work by July 1, 2014, he would remain on a Personal Leave of Absence, "however, your FTE status will be reduced to contingent." (*Id.*). While on a personal leave of absence, contingent status means that the leave is not job-protected and Plaintiff would be restored to his position only if it was still available, which meant that the position had to be posted. (Tate Aff. ¶ 13; Doc. 11-2, Dennis Dep. Ex. 12, p. 5). Plaintiff did not provide Defendant with a return to work form by July 1, 2014, and he was placed on contingent status. (*See* Doc. 10-1, Tate Aff. ¶ 14; Doc. 10-2, Spears Aff. ¶ 13). Plaintiff claims that he could have gone back to work prior to the expiration of his FMLA leave, but he has not provided any evidence in support of this claim. Ms. Spears testified that Plaintiff did not talk to her about coming back to work while wearing an orthopedic boot at any time during his FMLA leave. (Doc. 12-1, Spears Dep. at 28).

Plaintiff's doctor, Dr. Feibel, faxed a Release to Work form dated August 12, 2014, to Defendant, which released him to return to work on August 18, 2014. (Doc. 11-2, Dennis Dep. Ex. 24). However, at that time, Defendant had already made a determination not to post and fill his former position due to the decrease in surgeries. (Doc. 10-2, Spears Aff. ¶¶ 14–15). As of July 2014, surgical cases in the main operating room were down 6% compared to the same time period in 2013. (*Id.*). Ms. Spears testified that "[w]e were over –we had too many Surgical Tech positions." (Doc. 12-1, Spears Dep. at 53).[4]

Plaintiff describes that "neither Spears or Berry could interpret the statistics they claimed to rely on and in fact, the case load for surgeries did not decline in July 2014 as the Defendant suggests was the reason to place the Plaintiff on contingent status and Spears admitted she did

---

[4] Ms. Spears further testified that the following year, the hospital's business volume increased and at least one operating room tech was hired around September 2015.

-5-

not know what constitutes an adequate number of surgical technicians to staff NCH." (Doc. 23, Pl.'s Response in Opp. at 15). However, when questioned about the Monthly Surgical Data Reports (attached as Ex. B to Spears' Aff.), Spears explained that "I use the data provided to me to look at our trends over the past events. I don't know that we predict future events." (Doc. 18-3, Spears Dep. at 15). She continued, "I look at the volume of – as a trend over the course of the year and see how many we're doing in June and how many we've done in May. And I thing that's – that tends to be a fair predictor of what we'll do in July, although again – . . . Things tend to stay – once you're on a trend, things tend to stay on that trend." (*Id*. at 16). And Berry's Deposition discusses that "[t]hroughout 2014, as our volume was low, it would have been normal operations throughout the year" to evaluate a need or lack thereof for a surgical tech. (Doc. 18-5, Berry Dep. at 46–47). She further clarified that "I can tell you that there was no need to hire a Surgical Tech during the time frame that we're talking about." (*Id*.).

On August 27, 2014, Nationwide sent Plaintiff a letter informing him that his position was no longer available. (Doc. 11-2, Dennis Dep. Ex. 26). Nationwide offered Plaintiff assistance in locating other open positions at the hospital. (*Id*.). The letter also explained that under Nationwide's Leave of Absence/Family and Medical Leave Policy, the maximum duration for a leave of absence was six months and that Plaintiff could be terminated if he did not return to work within that time period. (*Id*.). Plaintiff's six month time period would terminate on September 11, 2014. (*Id*.).

Nationwide attempted to meet with Plaintiff to assist him in locating another position with the hospital, however, Plaintiff stated that he was not interested in any other position. (Doc. 11, Dennis Dep. at 143–45; 151). Further, after consulting his attorney, Plaintiff refused to participate in any further discussions or to apply for any posted positions with Nationwide. (*Id*.;

*see also* Doc. 10-3, Towns Aff. ¶ 11). Plaintiff recalls having a conversation with Ms. Spears sometime after his return to work paperwork was submitted, requesting to work with the orthopedic boot, however, at that point it was too late, his position had been eliminated. (Doc. 11, Dennis Dep. at 149–150). Plaintiff, having failed to return to work or seek any other positions with Nationwide, was terminated effective September 11, 2014, pursuant to Nationwide's Leave Policy. (Doc. 10-3, Towns Aff. ¶ 15; Doc. 10-2, Spears Aff. ¶ 19). Plaintiff was never denied FMLA leave.[5] Plaintiff then initiated this action and it was ultimately removed to this Court on February 20, 2015.

Approximately 16 weeks after Plaintiff's termination from Nationwide, he began working for Adena Healthcare in Chillicothe, Ohio as a contract employee and he was still employed there at the time of his Depsition. (Doc. 11, Dennis Dep. at 17). Plaintiff received three offers of permanent employment with them, but he was not interested because the pay was less and the location was an hour from his home. (*Id*. at 18-20).

## II. SUMMARY JUDGMENT STANDARD

Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether

---

[5] Plaintiff agreed that he was never denied FMLA leave, then clarified, "Well, let's be clear. I was forced to continue that time, because there was a time which I could have come back if they had let me use my CAM walker. That leave terminated simply because they insisted that it terminate." (Doc. 11, Dennis Dep. at 154). Plaintiff mentions that he could have returned to work in June 2014, around the same time he started physical therapy. (*Id*. at 164–165).

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id*. at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, Depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").  In considering the factual allegations and evidence presented in a motion for summary judgment, the Court must "afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Id*.

## III. DISCUSSION

Plaintiff Leonard Dennis alleges that Defendant Nationwide Children's Hospital interfered with his rights under the Family and Medical Leave Act, retaliated against him for taking FMLA leave, and failed to accommodate his disability.  Plaintiff's claims constitute two separate theories upon which a party can recover under the FMLA: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1) and § 2614(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of*

*America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).   Defendant has moved for summary judgment on all of Plaintiff's claims.  The Court will address each claim in turn.

**A.     FMLA Interference Claim**

The FMLA entitles an "eligible employee" to up to twelve weeks of leave per year if he or she has a "serious health condition" that prevents the employee from performing the functions of his or her job.  29 U.S.C. § 2612(a)(1)(D); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).  In order to maintain an interference claim under the FMLA, Plaintiff must establish that:  (1) he was an eligible employee under the FMLA; (2) that Nationwide is an employer as defined under the FMLA; (3) that he was entitled to leave under the FMLA; (4) that he gave notice of his intention to take leave; and (5) that Nationwide denied Plaintiff the FMLA benefits to which  he was entitled.  *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).  In assessing an interference claim, "the issue is simply whether the employer provided its employee the entitlements set forth in the FMLA–for example, a twelve-week leave or reinstatement after taking a medical leave."  *Id.* at 506 (quoting *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003)).

It is undisputed that Plaintiff requested and was granted FMLA leave.  Plaintiff asserts that "not returning [him] to work when at the time he asked to work with accommodation *before his restrictions were increased* is enough to show either interference or retaliation with FMLA leave benefits under *Bryson v. Regis Corp*."  (Doc. 23, Pl.'s Response at 14, citing , 498 F.3d 561 (6th Cir. 2007) (emphasis in original)).  Plaintiff argues that there was a time that he "could have come back if they had let me use my CAM walker."  (Doc. 11, Dennis Dep. at 154).  However, when questioned further, he couldn't provide any documentation that he was permitted to return to work while wearing the CAM walker.

-9-

> Q. So as you sit here today, you don't know when the release to start working with the CAM walker would have occurred?
>
> A. It was, I believe, the day before or two days before FMLA was to end.
>
> Q. So FMLA was to end, according to Exhibit 25, on June 3rd, 2014, right?
>
> A. Correct.

(Doc. 11, Dennis Dep. at 159).

Plaintiff further contends that he asked his direct supervisor, Kendrick, "for an opportunity to work light duty wearing the orthopedic boot and while seated given the kind of work he does required minimal standing." (Doc. 23, Pl.'s Resp. in Opp. at 12 (citing Doc. 11, Dennis Dep. at 48)). Plaintiff states that this occurred "[d]uring the end of June, prior to July 1st." (Doc. 11, Dennis Dep. at 47). But that "she sent me home and said there's no – we don't have light duty." (*Id*. at 48).

However, other than Plaintiff's testimony, there is no other evidence of Plaintiff's ability to return to work following his surgery until the release was submitted to Nationwide on August 18, 2014. (*See* Doc. 10-1, Tate Aff. ¶ 16). Ms. Tate stated that "I did not receive a return to work form regarding Dennis' ability to return to work on or before July 1, 2014. (*Id*. ¶ 14). Ms. Spears confirmed that Plaintiff "inquired about returning to work with an orthopedic boot. Dennis' physician had not released him from his restrictions at that time. It was my determination that, until Dennis' physician release him from his standing/walking restrictions, Dennis could not perform the essential functions of his job, with or without a boot. The orthopedic boot was not a factor in my determination of whether or not Dennis could return to his surg tech position." (Doc. 10-2, Spears Aff. ¶ 10).

Defendant argues, and the Court agrees, that it did not "interfere" with Plaintiff's FMLA benefits because he requested and was given the full twelve weeks of FMLA leave. Further, Plaintiff was unable to return to work at the conclusion of his FMLA leave. The Sixth Circuit has held that "an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave." *Edgar*, 443 F.3d at 506–507. The Sixth Circuit in *Edgar* held that the employer did not violate the FMLA in terminating the plaintiff because she was unable to return to work until after her FMLA leave had expired. *Id.* at 514.

Although not well-articulated by Plaintiff, his claim is more accurately described as an involuntary-leave claim, which is a type of FMLA interference claim. An involuntary-leave claim arises under § 2615(a)(1) when: "an employer forces an employee to take FMLA leave when the employee does not have a 'serious health condition' that precludes her from working." *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007). However, "the employee's claim ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past." *Id.*

There is no dispute in the case at bar that Plaintiff had a serious health condition. Plaintiff was under walking/standing restrictions–with or without the orthopedic boot–that prevented him from performing the essential functions of his job. It was for this reason that he requested and was granted FMLA leave. Plaintiff argues that Nationwide should have returned him to work when he asked to return to work with an accommodation (the orthopedic boot), instead of forcing him to remain on FMLA leave. (Doc. 23, Pl.'s Resp. in Opp. at 14). However, there is no requirement under the FMLA that an employer accommodate an employee by allowing them to return to work in a light-duty assignment or in some other capacity to avoid

having to take FMLA leave. *See Kleinser v. Bay Park Community Hosp.*, 793 F.Supp. 2d 1039, 1045–1046 (N.D. Ohio. 2011) ("Plaintiff's assignment to, or removal from, a temporary light-duty position does not, therefore, trigger any FMLA-guaranteed right."). Similarly, Nationwide did not interfere with Plaintiff's FMLA rights when allegedly refusing to accommodate Plaintiff by allowing him to return to work wearing his orthopedic boot and under the one hour standing/walking restrictions.

Even if Plaintiff could establish an involuntary-leave claim, Plaintiff never sought FMLA leave at a later date and was denied, therefore, his claim is not ripe. This is the case even when an employee has been terminated and thus, unable to request FMLA leave. *See Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 487–488 (6th Cir. 2013).

Finally, Plaintiff's seems to argue that Nationwide's decision not to post his position interfered with his FMLA leave. However, Plaintiff's FMLA leave expired on June 3, 2014, and at that time, if Plaintiff were cleared to return to work, he would have been reinstated to his position with the hospital. Nationwide made the decision not to post the surgical technician position in August of 2014. (Doc. 10-2, Spears Aff. ¶ 15). Although Plaintiff's leave was technically extended, he did not have any FMLA protection at the time Nationwide made the decision not to post a position for a surgical technician.

Based on the aforementioned, Plaintiff cannot establish that Nationwide interfered with his FMLA rights and therefore, Nationwide is entitled to summary judgment on Plaintiff's FMLA interference claims.

**B.     FMLA Retaliation Claim**

An employer may not discriminate or retaliate against an employee for taking FMLA leave. 29 U.S.C. § 2615(a)(2). In particular, an employer is prohibited from "us[ing] the taking

of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c); *Arban*, 345 F.3d at 403. The "retaliation" theory arises from 29 U.S.C. § 2615(a)(2), which provides that it "shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." To make a *prima facie* case of FMLA retaliation, Plaintiff must show that: (1) he exercised protected rights under the FMLA; (2) the employer took an adverse employment action against him, and (3) there was a causal connection between the plaintiff's exercise of his FMLA rights and the adverse employment decision. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314–15 (6th Cir. 2001).

Plaintiffs claiming FMLA retaliation may prove their cases using either direct or circumstantial evidence. "'[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group.'" *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)). "'The evidence must establish not only that the plaintiff's employer was predisposed to discriminate . . . but also that the employer acted on that predisposition.'" *Id.* (quoting *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000)). "Evidence of discrimination is not considered direct evidence unless a[n improper] motivation is explicitly expressed." *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006). Conversely, when a plaintiff seeks to prove FMLA retaliation using circumstantial evidence, the employee's "burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action 'under circumstances which give rise to an inference of unlawful

-13-

discrimination.'" *Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

### 1. Circumstantial Evidence / *McDonnell Douglas* Burden Shifting Analysis

Plaintiff does not provide any direct evidence of retaliation. Therefore, absent direct evidence of retaliation, if Plaintiff can establish a *prima facie* case, the burden then shifts to Nationwide to articulate a legitimate, non-retaliatory reason for the adverse employment action. If a legitimate, non-retaliatory reason is provided, then Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason is pretextual. *See Edgar,* 443 F.3d at 508; *Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003).

Plaintiff alleges generally in his Complaint that "Defendant attempted to use the Plaintiff's FMLA leave for a non-FMLA related purpose, that is, to find a way to remove an unwanted employee for a pretextual reason." (Doc. 3, Compl. ¶ 15). Plaintiff describes further in his Response that Nationwide retaliated against him for taking FMLA leave by: (1) forcing him to take FMLA leave instead of working with an accommodation; (2) placing him on contingency status after his FMLA leave had expired; (3) not posting his former surgical technician position; and (4) terminating his employment. There is no dispute that Plaintiff took the entire 12 weeks of FMLA leave and that ultimately, he was terminated by Nationwide. The issue in dispute is the "causal connection" requirement. To establish causation, Plaintiff "must present evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (6th Cir. 1982).

#### a. *Involuntary Leave Claim*

Plaintiff claims that Nationwide retaliated against him for taking FMLA by forcing him to take involuntary leave, rather than work with an accommodation. As set forth above with

respect to Plaintiff's interference claim, Nationwide did not force Plaintiff to take involuntary leave as he had a serious health condition and could not perform the essential functions of his job. Nationwide was not required to allow him to work with an accommodation to avoid taking FMLA leave. Accordingly, this does not constitute an adverse action and this retaliation claim is without merit.

### b.     *Contingency Status*

Plaintiff alleges that "Spears placed [him] on contingent status to defeat his leave and extended leave rights, and then fired him by claiming he was on contingent status." (Doc. 23, Pl.'s Resp. in Opp. at 17). Defendant argues, and the Court agrees, that providing Plaintiff with additional leave time after his FMLA leave expired is not an adverse action or retaliatory. Plaintiff's contingent status has no effect on his FMLA rights. There is no dispute that he was given his full 12 weeks of FMLA leave and he could have been terminated at the expiration of that 12 week period. However, Nationwide extended Plaintiff's job-protected leave past the 12 week period and then permitted Plaintiff to remain on leave, on contingent status, until he reached six months of total leave.

Plaintiff also asserts that he was constructively discharged as a result of being placed on contingency status. To establish a claim of constructive discharge, a plaintiff must provide evidence that "(1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee actually quit." *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 481 (6th Cir. 2012). Plaintiff has failed to provide any evidence that providing him with additional leave time in addition to his FMLA leave created intolerable working conditions. Nor has Plaintiff provided any evidence that Nationwide acted with the intent of forcing him to quit.

And finally, Plaintiff did not actually quit or resign, he was terminated.  Therefore, this retaliation claim also fails.

        *c.*        ***Failing to Post Surgical Technician Position***

Plaintiff argues that Nationwide failed to post his former surgical technician position as retaliation for exercising his FMLA rights.  Assuming Plaintiff can establish a prima facie case of retaliation with respect to this alleged adverse action, Nationwide argues that it has a legitimate business purpose for not positing the position–there was a significant decrease in surgeries in the main operating room in 2014.  Based on the surgery numbers, Ms. Spears determined that the main operating room was adequately staffed with surgical technicians and there was no need to post an open position.  In other words, Plaintiff's former position did not need to be filled.

Plaintiff has not provided any evidence that Nationwide's legitimate business reasons for not filling Plaintiff's former position were pretext for retaliation.  Plaintiff attempts to poke holes in the testimony of Nationwide employees regarding this decision and argues that two new surgical technicians were hired after Plaintiff was terminated.  Plaintiff's counsel's attempt to trip up the witnesses (Spears and Berry) during their Depsitions on statistics and calculations is not evidence.  Plaintiff has not pointed to any data that contradicts that relied upon by Nationwide.  Spears testified that she looks at the charts, like those referenced in Exhibit B of her affidavit, every month.  And "[t]he first time that that position was open was the first time we had a conversation about whether or not we were going to fill it."  (Doc. 18-3, Spears Dep. at 40).  Further, when asked about "cutting" Plaintiff's position, Spears clarified that "[t]he position that he formerly held was empty.  And I looked at volumes and the amount of staff that we currently had and determined that it was not necessary to fill that position – to post that

position." (*Id*. at 35). Though there may be some dispute over the statistics upon which the decision not to post Plaintiff's prior positions was based, Plaintiff must still put forth evidence demonstrating that her employer did not "honestly believe" in the proffered non-discriminatory reason for her termination. *See Smith v. Chrysler*, 155 F.3d 799, 806–807 (6th Cir. 1998). Plaintiff has failed to do so. Plaintiff, therefore, cannot show that "the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [Nationwide's] action, or (3) that they were insufficient to motivate [Nationwide's] action." *Chen*, 580 F.3d at 400. Accordingly, this claim for retaliation must also fail.

### *d.    Terminating Employment*

There is no dispute that Plaintiff's termination was an adverse action. Plaintiff's retaliation argument based on his termination is a continuation of the aforementioned argument that his position was eliminated in retaliation for exercising his FMLA rights. Plaintiff relies on the *Bryson* case to support his claim for retaliation and asserts that the he can establish the causal connection element through temporal proximity. *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) However, temporal proximity between protected activity and an adverse employment action may not give rise to a finding of a causal connection unless it is "coupled with other indicia of retaliatory conduct." *Dixon v. Gonzales*, 481 F.3d 324, 333–34 (6th Cir. 2007); *see also Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006) ("although temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection"); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000) (temporal proximity alone does not support an inference of retaliatory discrimination in the absence of other evidence").

-17-

The plaintiff in *Bryson* was terminated when she was unable to return to work at the conclusion of her 12 weeks of FMLA leave.  498 F.3d at 567.  The Court found that the plaintiff's termination three months after she requested FMLA leave and on the day she was scheduled to return to work, was evidence of a causal connection.  Plaintiff also presented evidence from other Regis employees who testified that Plaintiff's boss was angry that she was taking FMLA leave.  *Id.* at 571.  The employer's legitimate, non-discriminatory reason for terminating the plaintiff was because she was unable to return to work at the conclusion of her FMLA leave.  *Id.* (citing *Edgar*, 443 F.3d at 506-507) ("an employer does not violate FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave")).  Then, in discussing pretext, the Court discussed "in a retaliation case, after acquired evidence of an employee's inability to return to work cannot be used to shield a defendant from liability, but should be considered in determining the appropriate remedy for the FMLA violation."  *Id.* at 572 (citing *Edgar*, 443 F.3d at 513).  In reversing the district court's award of summary judgment to her employer, the Sixth Circuit found factual questions "regarding when Regis learned that Bryson was unable to return to work in relation to when it made its termination decision, and from whom Regis obtained this information."  *Id.* at 572.

However, *Bryson* is distinguishable from the case at bar.  Plaintiff was given additional time to return to work following his FMLA leave.  He was ultimately terminated following a six month leave of absence, including his 12 weeks of FMLA leave.  Unlike the plaintiff in *Bryson*, Plaintiff Dennis was physically capable of returning to work without restriction at the time of his termination, but chose not to apply for any open positions at the hospital.  Finally, there is no other evidence of causation other than temporal proximity.  There is not evidence of

-18-

discriminatory or inflammatory statements made by the administrators at Nationwide, like there were in *Bryson*.

Finally, even assuming Plaintiff has set forth a prima facie case of retaliation for exercising his FMLA rights, Nationwide has set forth a legitimate, non-discriminatory reason for Plaintiff's termination, and he cannot establish that the elimination of his position and his termination were pretext for retaliation. For these reasons, Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claims.

**C.    Disability Discrimination and Retaliation**

Plaintiff generally alleges in his Complaint that "Defendant refused to accommodate the Plaintiff's disability without justifiable cause or reasons and this refusal is directly related to its claim that the Plaintiff cannot perform his operation room technician job duties and moreover, forced him to use all available FMLA leave and then extended FMLA/disability leave to prevent him from returning to work." (Doc. 3, Compl. ¶ 19). Plaintiff submits as evidence that Ms. Spears considered Plaintiff to be disabled. When Plaintiff's counsel questioned Ms. Spears during her Depsition, "What about you, did you think [Dennis] was disabled?" She responded, "Yes." (Doc. 12, Spears Dep. at 77). Plaintiff argues that "Spears considered the Plaintiff disabled and unable to work and it was her attitude that she would not accommodate the Plaintiff by letting him work with an orthopedic boot on or even engaging in a two way dialogue with him about working while seated that is the cause of the disability in the Plaintiff's case." (Doc. 23, Pl.'s Resp. in Opp. at 16–17). Plaintiff asserts that his "medical condition and whether it is an actual handicap or disability are not in dispute under the *perceived as* theory of liability in this case. (*Id*. at 17).

Defendant argues, however, that Plaintiff cannot state a claim for failure to accommodate based on a "regarded as" or "perceived as" theory as a matter of law. The Court agrees. An employer does not have a duty to accommodate an employee it regards as disabled. *See Wells v. Cincinnati Children's Hosp. Med. Ctr.*, 860 F.Supp. 2d 469, 483 (S.D. Ohio 2012) (Beckwith, J.). Therefore, to the extent Plaintiff is attempting to establish a disability discrimination or retaliation based on a "perceived as" theory, such claim fails.

Even if Plaintiff were attempting to establish a prima facie case of failure to accommodate, he must first offer evidence that he is/was in fact disabled. Plaintiff, however, has not provided any evidence that he is disabled other than the testimony of Ms. Spears. Accordingly, Defendant is entitled to summary judgment on Plaintiff's failure to accommodate and disability discrimination and retaliation claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. Plaintiff's Motion to Supplement is **DENIED AS MOOT**.

The Clerk shall remove Documents 10 and 24 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

    **IT IS SO ORDERED.**


    */s/ George C. Smith*
    **GEORGE C. SMITH, JUDGE**
    **UNITED STATES DISTRICT COURT**